UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JESSICA SAMPSON,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:18-cv-231

Magistrate Judge Michael J. Newman
(Consent Case)

___

**DECISION AND ENTRY: (1) REVERSING THE ALJ'S NON-DISABILITY FINDING AS UNSUPPORTED BY SUBSTANTIAL EVIDENCE; (2) REMANDING THIS CASE UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR AN IMMEDIATE AWARD OF BENEFITS; AND (3) TERMINATING THIS CASE ON THE COURT'S DOCKET**

___

This is a Social Security disability benefits appeal for which the parties have consented to entry of final judgment. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Supplemental Security Income ("SSI"). This case is before the Court on Plaintiff's Statement of Errors (doc. 13), the Commissioner's memorandum in opposition (doc. 15), Plaintiff's reply (doc. 16), the administrative record (doc. 9),[1] and the record as a whole.

I.

A. **Procedural History**

Plaintiff filed for SSI on September 5, 2013 claiming disability as a result of a number of alleged impairments including, *inter alia*, diabetes mellitus with neuropathy, anxiety, post-

---

[1] Hereafter, citations to the electronically-filed administrative record will refer only to the Transcript (tr.) number.

traumatic stress disorder ("PTSD"), borderline intellectual functioning, and bipolar disorder. Tr. 1506-08.

After an initial denial of her application, Plaintiff received a hearing before ALJ Mark Hockensmith on September 14, 2015. Tr 41-88. ALJ Hockensmith issued a written decision on September 25, 2015 finding Plaintiff not disabled. Tr. 15-40. Plaintiff appealed the decision to this Court, and the Commissioner agreed that a remand was warranted. Tr. 1623. On June 19, 2017, this Court granted the parties' joint motion for a remand for further proceedings to re-evaluate the medical opinions of record. Tr. 1620; *Sampson v. Comm'r of Soc. Sec.*, 3:16-cv-513, 2017 U.S. Dist. LEXIS 94158 (S.D. Ohio June 19, 2017).

Plaintiff received a second hearing before ALJ Hockensmith on April 4, 2018. Tr. 1592-1618. The ALJ issued a written opinion on April 25, 2018 again finding Plaintiff not disabled. Tr. 1503-38. Specifically, the ALJ found at Step Five that, based upon Plaintiff's residual functional capacity ("RFC") to perform a reduced range of sedentary work,[2] "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]" Tr. 1511-38.

Thereafter, the Appeals Council denied Plaintiff's request for review, the ALJ's April 2018 non-disability finding the final administrative decision of the Commissioner. Tr. 1-3. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007). This April 25, 2018 non-disability finding is presently before the Court for review.

**B.     Evidence of Record**

The evidence of record is adequately summarized in the ALJ's decision (Tr. 1503-38), Plaintiff's Statement of Errors (doc. 13), the Commissioner's memorandum in opposition (doc.

---

[2] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 416.967(a).

15), and Plaintiff's reply (doc. 16). The undersigned incorporates all of the foregoing and sets forth the facts relevant to this appeal herein.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a

"disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?;

2. Does the claimant suffer from one or more severe impairments?;

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?;

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?; and

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff argues that the ALJ erred in (1) weighing the opinions of her treating doctors; (2) analyzing the opinion of her case manager; (3) considering her treatment compliance; and (4) weighing the opinions of the state agency's physicians. Doc. 13 at p. 10 of 21. Agreeing with Plaintiff's first assignment of error, the undersigned need not address Plaintiff's remaining arguments.

Until March 27, 2017, "the Commissioner's regulations [that apply to this appeal] establish[ed] a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers. *Id*. Under the regulations then in effect, the opinions of treaters are entitled to the greatest deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 416.927(c)(2).

A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 416.927(c).[3]

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9.

---

[3] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-cv-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 416.927. *Id*.

5

Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. Put simply, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)). In the absence of a controlling treating source opinion, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 416.927(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related to the individual's impairment(s). *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Here, two of Plaintiff's treating physicians authored opinions on her functional abilities.

**A. Dr. Snider**

First, Brad Snider, M.D., Plaintiff's long-standing family physician, (tr. 1610), issued an opinion on December 30, 2014. Tr. 1436-37. Secondary to a diagnosis of Type I and Type II Diabetes, Dr. Snider opined that Plaintiff could work two to four hours per day; stand for thirty minutes at a time; sit for two hours at a time; lift ten pounds occasionally and five pounds frequently; and could never balance. Tr. 1436. Ultimately, Dr. Snider concluded that, due to her impairments, Plaintiff would be off task twenty-five percent or more per work week and had anxiety and/or depression which would limit her ability to withstand the stresses and pressures of ordinary work activity. Tr. 1436-37.

In granting Dr. Snider's opinion only "some weight," the ALJ found that:

The circled options endorsed by Dr. Snider are conclusory and do not provide a basis for the limitations he assessed. The questions submitted on this form are somewhat misleading as they only ask how long the claimant could stand and sit at one time and do not ask for limitations for sitting, standing, and walking throughout the work day. The limitations are also internally inconsistent as he indicated the claimant could work 2-4 hours, yet she is only able to sit for 2 hours at one time.

6

> The questionnaire also seems incomplete and designed to find a person disabled. Finally, Dr. Snider's limitations are not supported by his treatment records. Dr. Snider's treatment records prior to this opinion generally contain few examinations findings. Furthermore, the most recent physical examination from October of 2014 does not document significant abnormalities to corroborate the extreme limitations he endorsed.

Tr. 1514. Multiple errors lie in the ALJ's assessment of Dr. Snider's opinion.

Initially, the undersigned notes that the ALJ erred in failing to specifically mention the applicable concept of controlling weight, analyze the controlling weight factors, or specifically decline to give Dr. Snider's opinion controlling weight. *Id.* As noted by this Court on numerous occasions, such a failure is reversible error because it "deprives the Court of the opportunity to meaningfully review whether [the ALJ] undertook the 'two-step inquiry' required when analyzing treating source opinions." *Marks v. Colvin*, 201 F. Supp. 3d 870, 882 (S.D. Ohio 2016); *Hatton v. Comm'r of Soc. Sec.*, No. 3:18-CV-008, 2018 WL 4766963, at *4 (S.D. Ohio Oct. 3, 2018), *report and recommendation adopted,* No. 3:18-CV-8, 2018 WL 5084758 (S.D. Ohio Oct. 18, 2018); *Reese v. Comm'r of Soc. Sec.*, No. 3:17-CV-283, 2018 WL 2381896, at *3 (S.D. Ohio May 25, 2018).

Rather, the ALJ discounted Dr. Snider's opinion, in part, as conclusory and inconsistent with his own treatment records. Tr. 1514. Such conclusions fall under the "supportability" and "consistency" factors found at 20 C.F.R. § 416.927(c)(3) and (4) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion"; "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). As this Court has repeatedly found, the two factors set forth under 20 C.F.R. § 416.927(c)(3) are not part of the controlling weight analysis. *Lutz v. Comm'r of Soc. Sec.*, No. 3:16-CV-210, 2017 WL 3140878, at *3 (S.D. Ohio July 25, 2017), *report and recommendation adopted*, No. 3:16-CV-210, 2017 WL 3432725 (S.D. Ohio Aug. 9, 2017); *Dunham v. Comm'r of Soc. Sec.*, No. 3:16-CV-414,

2017 WL 4769010, at *4 (S.D. Ohio Oct. 20, 2017), *report and recommendation adopted sub nom. Dunham v. Berryhill*, No. 3:16-CV-414, 2018 WL 502715 (S.D. Ohio Jan. 22, 2018); *Caraway v. Comm'r of Soc. Sec.*, No. 3:16-CV-138, 2017 WL 3224665, at *4 (S.D. Ohio July 31, 2017), *report and recommendation adopted sub nom. Caraway v. Berryhill*, No. 3:16-CV-138, 2017 WL 3581097 (S.D. Ohio Aug. 17, 2017); *Hall v. Comm'r of Soc. Sec.*, No. 3:17-CV-345, 2018 WL 3386311, at *4 (S.D. Ohio July 12, 2018), *report and recommendation adopted*, No. 3:17-CV-345, 2018 WL 3636590 (S.D. Ohio July 31, 2018); *Wolder v. Comm'r of Soc. Sec.*, No. 3:16-CV-00331, 2017 WL 2544087, at *4 (S.D. Ohio June 13, 2017), *report and recommendation adopted*, No. 3:16-CV-331, 2017 WL 2819882 (S.D. Ohio June 28, 2017); *Warren v. Comm'r of Soc. Sec.*, No. 3:16-CV-00099, 2017 WL 480405, at *4 (S.D. Ohio Feb. 6, 2017), *report and recommendation adopted*, No. 3:16-CV-99, 2017 WL 1019508 (S.D. Ohio Mar. 14, 2017); *Klein v. Comm'r of Soc. Sec.*, No. 3:14-CV-78, 2015 WL 4550786, at *6 (S.D. Ohio Mar. 24, 2015).

Instead, the 20 C.F.R. § 416.927(c)(3) supportability and (c)(4) consistency factors are "applied after the ALJ decides to 'not give the treating source's medical opinion controlling weight.'" *Lutz*, No. 3:16-CV-210, 2017 WL 3140878, at *3; *see also* 20 C.F.R. § 416.927(c)(2) (stating that the supportability factor in paragraph (c)(3) is applied when the ALJ does "not give the treating source's medical opinion controlling weight"); *see also Gayheart*, 710 F.3d at 376 (noting that these factors are "properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight"). But even assuming, *arguendo,* that the ALJ was properly analyzing these factors, the ALJ erred in identifying only one treatment note indicating normal findings, while ignoring Dr. Snider's notes documenting abnormal findings. Tr. 1514; *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x. 543, 551–52 (6th Cir. 2010) (holding that "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record"); *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x. 254, 258 (6th Cir. 2015) (finding the "ALJ

erred by discounting a treating source's opinions as inconsistent with the record without discussing extensive treatment notes from another source"); *Redlin v. Comm'r of Soc. Sec.,* No. 12–12779, 2013 WL 1720829, at * 13–14 (E.D. Mich. Mar. 27, 2013) (finding the ALJ's non-disability finding unsupported by the evidence where "the ALJ's conclusory statement" concerning the treating physician's opinions failed to comply with the treating physician rule "because it fails to identify, with any level of specificity, the evidence which supposedly undermines her opinions"). For example, Dr. Snider noted numerous emergency room visits for diabetic ketoacidosis ("DKA") and heart palpitations due to anxiety, symptoms of PTSD and anxiety, instances of high blood sugar, diabetic neuropathy, suboptimal control over blood sugar, and an unusual MRI of the lumbar spine. Tr. 2280, 2281, 2290, 2292, 2293, 2298, 2303.

The ALJ also takes issue with the form of the document elucidating Dr. Snider's opinion, but these qualms do not constitute good reasons to discount the treating physician's opinion. First, the ALJ asserts that the form was misleading and designed to find a person disabled. Tr. 1514. It is unclear to the undersigned how a form -- allowing Dr. Snider to easily circle answers indicating that Plaintiff had no limitations in various functional abilities and has the ability to work for eight hours a day -- was designed to find a person disabled. Tr. 1436. Second, the ALJ failed to demonstrate how Dr. Snider's opinion -- that Plaintiff can only sit for two hours at a time -- is inconsistent with his opinion that she can work between two to four hours a day. Tr. 1436, 1514. *Pollard v. Astrue*, No. 1:11–cv–186, 2012 WL 2341814, at *5 (S.D. Ohio June 20, 2012) *report and recommendation adopted by* 2012 WL 2931310 (S.D. Ohio July 18, 2012) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (court cannot uphold the decision of the ALJ, even where there may be sufficient evidence to support the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result")). Thus, the ALJ failed to provide good reasons for discounting Dr. Snider's treating opinion.

**B. Dr. MacNealy**

The ALJ committed similar errors in weighing the second treating opinion of record -- that of Plaintiff's treating neurologist, Mark MacNealy, D.O. Dr. MacNealy treated Plaintiff for depression, anxiety, PTSD, and Bipolar Disorder. *See e.g.*, tr. 1473. Due to these impairments, Dr. MacNealy concluded, *inter alia,* that Plaintiff "needed to avoid people in crowded places"; could "not remember due to impaired short-term memory"; could not "understand directions because she is unable to focus her attention"; could not "maintain attention for a substantial period of time"; was "unable to organize her thoughts [or] have meaningful conversations"; and had "social limitations in her ability to adapt." Tr. 1464-65. At the first administrative hearing, Dr. MacNealy testified that Plaintiff would have problems with absenteeism due to her PTSD, as well as issues with irritability at work due to her mood disorder. Tr. 73-74.

Again, the ALJ afforded this treating physician's opinion "little weight" without acknowledging his status as a treating neurologist, mentioning the controlling weight test, or applying it. Tr. 1523. Again, in evaluating Dr. MacNealy's opinion, the ALJ assessed only the "consistency" factor -- which is to be applied after the ALJ declines to afford the opinion controlling weight. *Id.* As explained *supra*, these omissions constitute reversible error. *Marks*, 201 F. Supp. 3d at 882; *Lutz*, 2017 WL 3140878, at *3. This is true especially where the record includes findings supportive of Dr. MacNealy's opinion and a proper analysis would have afforded deference to the opinion. *See e.g.*, tr. 1207 (prescription of Zoloft for anxiety, sadness, and panic attacks); tr. 1205 (increased Zoloft dosage); tr. 1401 (endorsement of suicidal thoughts); tr. 1412

(noting depressed/anxious mood, constricted affect, a diagnosis of depression and an anxiety disorder, and a GAF[4] score of 32); tr. 1509 (depressed and discouraged mood).

The only other evidence the ALJ found to be inconsistent with Dr. MacNealy's opinion was Plaintiff's "presentation to [the state agency's evaluating physician] in which she was pleasant, cooperative, spontaneous, verbal, and interacted appropriately" and that she "did not have difficulties relating her issues during the hearing and she participated in a meaningful fashion." Tr. 1523. In other words, the ALJ discounted Dr. MacNealy's opinion -- formed after nearly a year of treating Plaintiff's mental health impairments -- in favor of observations about Plaintiff's demeanor on a single day. Such a conclusion runs contrary to the very heart of the treating physician rule -- which grants deference to the treating physician due to his or her ability "to provide a detailed, *longitudinal* picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 416.927(c)(2) (emphasis added); *see also Blakely*, 581 F.3d at 406.

---

[4] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity...and questionable psychometrics in routine practice"). As set forth in the DSM-IV, however, a GAF of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*,…avoids friends, neglects family, and is unable to work)." DSM-IV at 34. A GAF score of 41-50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job)." Id. A GAF score of 51-60 is indicative of "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning *(e.g.*, few friends, conflicts with peers or co-workers)." *Id*. A GAF score of 61 to 70 indicates "[s]ome mild symptoms (*e.g*., depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning...but generally functioning pretty well." *Id*. A GAF score of 71 to 80 indicates "no more than slight impairment in social, occupational, or school functioning (*e.g*., temporarily falling behind in schoolwork)." *Id*.

Having failed to properly conduct a controlling weight analysis twice, the ALJ committed reversible errors. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (Even where "substantial evidence otherwise supports the decision of the Commissioner ... reversal is required [where] the agency failed to follow its own procedural regulation").

## IV.

When, as here, the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to reverse and remand the matter for rehearing or to reverse and order the award of benefits. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The ALJ's errors, here, merit reversal for an immediate award of benefits because proof of disability is strong and opposing evidence lacks substance. As noted above, there are opinions from two of Plaintiff's treating physicians -- which preclude work or are more restrictive than the ALJ's residual functional capacity ("RFC") finding -- and, together, they establish Plaintiff's entitlement to benefits. *See* tr. 1436, 1673. Further, the undersigned is disinclined to remand in light of the two administrative hearings Plaintiff has already received -- indicating that sufficient fact-finding has taken place -- and because it would further and unnecessarily delay this case, filed over six years ago. Tr. 41-88, 1592-1618. Accordingly, because no factual issues remain and the record demonstrates Plaintiff's entitlement to benefits, remand for an immediate award of benefits should occur. *Ellis v. Comm'r of Soc. Sec.*, No. 3:15-CV-137, 2016 WL 463359, at *2 (S.D. Ohio

Feb. 8, 2016), *report and recommendation adopted,* No. 3:15-CV-137, 2016 WL 828144 (S.D. Ohio Feb. 26, 2016).

## V.

For the foregoing reasons, **IT IS ORDERED THAT**: (1) the Commissioner's non-disability finding is unsupported by substantial evidence, and **REVERSED**; (2) this matter is **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for an immediate award of benefits; and (3) this case is **TERMINATED** on the docket.

**IT IS SO ORDERED.**

Date: 7/26/2019                                       s/ Michael J. Newman
                                                               Michael J. Newman
                                                               United States Magistrate Judge